## LOUISIANA & ARKANSAS RAILWAY COMPANY v. NIX.

### Opinion delivered March 21, 1910.

1. RAILROADS—TRAVELLER AT CROSSING—PROXIMATE CAUSE OF INJURY.—
Where the team of a traveller at a public crossing was frightened by
the negligence of defendant railway company, so that they ran across an
open ditch and threw the traveller out, resulting in his being injured,
the negligence of defendant in frightening the team was the proxi-
mate cause of this injury, even though it would not have occurred
but for the open ditch. (Page 274.)

2. DAMAGES—PERSONAL INJURIES—EXCESSIVE DAMAGES.—Where plaintiff
sustained a compound fracture of the ankle joint, which developed into
ankylosis and necrosis of the bone, had his nervous system af-
fected, suffered from septic fever and from absorption of toxine,
was confined to his bed three months suffering excruciating pains,
was permanently injured and unable to follow his vocation, had
an expectancy of life of 16½ years, and had been earning $600 per
year, *held* that an award of $6,000 was not excessive. (Page 276.)

Appeal from Lafayette Circuit Court; *Jacob M. Carter,*
Judge; affirmed.

*Henry Moore* and *Henry Moore, Jr.,* for appellant.

1. The sixth instruction requested by appellant should have
been given. If the proximate cause of the injury was a ditch
or unprotected culvert in the road crossing over the other rail-
way company's road, over which appellant had no control, it is
not responsible for the injury.

2. Appellee by his own testimony was guilty of contribu-
tory negligence; and if that negligence contributed in any degree
to the injury, he cannot recover. 29 Cyc. 505. It was his duty
to stop and look and listen for approaching trains. 63 N. W.
401; 48 La. Ann. 1; 109 La. 43. And he is not excused, even if
the statutory signals were not given. 56 Ark. 457; 54 Ark. 431;
62 Ark. 235; 84 Ark. 270; 85 Ark. 532.

3. The verdict is so excessive as to show that the jury
were influenced by passion or prejudice.

*Searcy & Parks,* for appellee.

1. It is well settled that the verdict of the jury settles all
disputed questions of fact. The inquiry here is not whether
the verdict is sustained by the weight of the evidence, but
whether the evidence is legally sufficient to sustain it. 67 Ark.
401; 70 Ark. 140; 74 Ark. 478.

2. There was no error in refusing appellant's sixth instruction requested. 79 Ark. 490; 61 Ark. 141; 88 Ark. 524. The question of contributory negligence was submitted to the jury under proper instructions, and their verdict is conclusive. 71 Ark. 428. A railway company is held to the exercise of due care for the safety of all persons while in the exercise of its franchise, whether on its own road or that of another. 53 Ark. 347; 70 Ark. 297.

BATTLE, J. On the 25th day of June, 1908, W. M. Nix brought an action against the Louisiana & Arkansas Railway Company in the Lafayette Circuit Court, to recover damages caused by a personal injury. The plaintiff stated his cause of action in his complaint as follows:

"That the St. Louis Southwestern Railway Company owns and maintains several spurs or switch tracks in the town of Stamps, paralleling its main line track, and that, by some traffic arrangement between defendant company and the said St. Louis Southwestern Railway Company, said tracks are used by defendant company's engines and trains in switching cars and doing other work. That a public street or thoroughfare crosses said railroad tracks on the east side of Stamps, in what is known as 'East Stamps,' and that on said 6th day of February, 1908, the plaintiff was traveling in a wagon loaded with lumber, drawn by two mules, upon the said public highway, and while in the act of crossing the said railroad tracks at said crossing defendant's engine, run by defendant, attached to several cars, was suddenly pushed forward, which frightened the plaintiff's mules, then on said crossing, and that his mules and wagon barely escaped being struck by said backing cars and engine; that the sudden starting up of said engine and the closeness of the cars and engine rapidly moving down upon them so frightened said mules that they ran away, and plaintiff was thrown from his wagon, and was seriously and permanently injured. That he sustained a compound fracture of the ankle joint; the internal maleolus being severed at its base from the tibia, and fibula being fractured about two inches from the lower extremity, without any fault on his part. That the train causing the accident consisted of a locomotive and three or four cars; that it was a switch engine, and suddenly and rapidly moved or backed said cars down upon plaintiff, and omitted to give any signal by bell or

whistle of its approach to said crossing, and its presence was unknown to plaintiff at the time he drove upon said crossing, although he was careful and cautious in listening and looking for trains before going upon said track.  By reason of said injuries the plaintiff has suffered intense pain, and was confined to his bed for three months, and that his injuries are permanent; that he is a farmer by occupation, and knows no other business, but that on account of his injuries he will never be able to perform his customary and necessary duties as such; and that he has necessarily expended for physicians and other services the sum of $......., and his general health is greatly impaired, and he has sustained other injuries, in all to his damage in the sum of ten thousand dollars."

The defendant answered, and denied the material allegations of the complaint, and pleaded that plaintiff's injuries were caused by his own contributory negligence.

Defendant moved that plaintiff be required to make his complaint more specific by showing in what manner he has sustained damage in the sum of $10,000.  The court overruled the motion. We think that the complaint is sufficiently specific in showing how he sustained damage in the sum of $10,000.

The issues in the case were tried by a jury, and they, after hearing the evidence adduced by the parties and the instructions of the court, returned a verdict in favor of the plaintiff for $6,000.  The evidence which sustained their verdict tended to prove the following facts: The St. Louis Southwestern Railway Company owns, operates and maintains several spurs or switch tracks in the town of Stamps, in this State, paralleling its main track.  By some traffic arrangement between the defendant and that company these tracks were used by the defendant's engines and trains in switching cars and doing other work.  A public street or thoroughfare crosses these tracks on the east side of Stamps, in what is known as "East Stamps." There were three of these tracks, and they were known as the south switch or planer track, middle switch or passing track, and the main line track, all being straight at this point.  On the 6th day of February, 1908, plaintiff, in a wagon drawn by two mules, and loaded with lumber, approached this crossing. The mules were gentle and accustomed to trains.  At this time

a row of box cars stood on the south or planer track, and extended west from the crossing as far as he could see, and obstructed his view and prevented him from seeing down the middle or passing track and the main line. On reaching within a few feet of the crossing plaintiff stopped his team and looked and listened for trains. Not hearing or seeing any, and no signal of approaching trains being given, and thinking the way safe, he drove upon the crossing, and just after his mules had passed over the planer track he saw three or four cars backed by defendant's switch engine, on the middle or passing track, approaching the crossing, which they crossed, at the rate of eight or ten miles an hour. The sudden proximity of the cars frightened the mules, causing plaintiff to lose control of them, and the mules to run away. The team with the wagon went up the railroad track for ten or twelve feet, and were brought back in a circle and off that track just as the cars and engine passed. As they went back into the road at the north side of the crossing, the wagon struck something, and threw plaintiff out, causing him to sustain a compound fracture of the ankle joint. The wound developed into complete ankylosis and into necrosis of the bone. His nervous system was affected, and septic fever developed, and a general debility from absorption of toxine and the general nervous shock. He was confined to his bed for three months, and during that time suffered excruciating pain, and most of the time had to take opiates to enable him to rest. At the time of the trial in this action, fifteen months after the injury, he was on crutches. The injury is permanent, and he cannot follow his vocation. At the time of the injury he was fifty-seven years of age; his expectancy of life was 16.5 years; he was in good health, and earning annually about $600.

The defendant asked and the court refused to instruct the jury as follows:

"6. The jury are instructed that if they believe from a preponderance of the evidence in this cause that plaintiff's accident occurred at a public crossing over the St. Louis Southwestern Railway Company's road, and that, although the plaintiff's mules had become frightened at the engine or cars of the defendant and run away, yet if they further believe that said accident would not have occurred but for a ditch or unprotected culvert in said road crossing, for which the defendant was not

responsible, and that the proximate cause of the accident was said unprotected ditch or culvert in said public road crossing, then their verdict should be for the defendant."

The court rendered a judgment in accordance with the verdict, and the defendant appealed.

Should the refused instruction have been granted? A similar question was presented and decided in *Railway Company* v. *Roberts,* 56 Ark. 387. The facts in that case were as follows: "On October 4, 1888, Roberts and Lewis started from the town of Corning, going north. They were driving a two-mule team. For some 600 yards the public road ran sixty-five or seventy feet west of defendant's track and parallel with it. Then it crossed the track. After deceased and his companion had driven about 200 yards north, a north-bound train, going twenty-five or thirty miles an hour, came in sight. As it approached, the team became frightened and began to run. There was evidence from which the jury might have inferred that the mules were frightened by escape of steam; that, although the trainmen saw the team was frightened, they continued to blow their whistle and to permit the steam to escape from the time the mules took fright until the accident occurred, and that no effort was made to check the speed of the train. The driver lost all control of the mules; they ran on until they reached the crossing, where they turned and attempted to cross the track just in front of the approaching engine. The wagon crossed with slight injury, but Roberts was jolted out on the track. As he fell upon the ground, he was instantly struck by the pilot beam of the engine, and was so badly injured that he died immediately. There was testimony that the crossing was defective; also that a wagon could have been driven over it safely at an extraordinary rate of speed."

The defendant requested the court to instruct the jury as follows: "6. If the jury find from the evidence that the engineer of defendant's train was, at the time of the accident, on the lookout, and saw the deceased just before and as he started across the track, and immediately used every effort in his power and control to check his train, but failed because of the nearness of his engine to the deceased, the court instructs you that there was no negligence on the part of the defendant, and you will

find for the defendant." And the court modified it by adding: "Unless you find that the accident and injury was directly caused by the engineer negligently blowing off steam or by the negligence of the defendant in not keeping the crossing in repair."

Mr. Justice MANSFIELD, in delivering the opinion of the court, said: "But, in giving the sixth instruction requested by the defendant with the change made by the court, an error was committed which we cannot treat as otherwise than prejudicial to the defendant. The effect of that instruction was to direct a verdict for the plaintiff if the jury found that the injury to his intestate was caused by the defendant's negligence either in blowing off steam or in failing to keep the crossing in repair. It made the defendant's liability the same in either case; and the plaintiff was thus allowed to recover if the jury found there was negligence as to the crossing, although they were unable to find that there was any whatever in frightening the team. But all the evidence shows that the proximate cause of the injury was the frightening the team. * * * If that was due to the company's negligence, it was liable for all the consequences resulting directly from it; otherwise it was liable for none of them." To the same effect was *Railway Company v. Lewis,* 60 Ark. 409.

According to these two cases the instruction in this case was properly refused.

In this case the defendant's engine and cars were approaching a public crossing when the plaintiff was crossing or about to cross the same with his wagon and team. In such cases the statute provides that a bell of at least thirty pounds weight, or a steam whistle, shall be placed on each locomotive or engine, and shall be rung or whistled at the distance of at least eighty rods from the crossing, and be kept ringing or whistling until it shall have crossed the road or street. If the locomotive or engine commence moving within the eighty rods, the bell should be rung or the whistle whistled until it shall have passed the crossing. Kirby's Digest, § 6595. This is required for the protection of persons and vehicles passing over the public crossing. In this case there was evidence adduced tending to prove that plaintiff stopped and listened before he drove upon the crossing, and saw no locomotive or cars running, and heard no signal, and

in fact none was given, and thereupon he drove upon the crossing. There was evidence tending to prove that, if a signal had been given, he would have avoided injury. His stopping, looking and listening was evidence of an intention not to go upon the crossing if he had heard a signal indicating that it was dangerous to cross. As it was, he would have crossed in safety if his mules had not been frightened, and their fright was due to the failure to give the signal, as they would not have been exposed to such fright if the signal had been given.

The evidence was sufficient to sustain the verdict in this court as to the amount of damages and in other respects.

Judgment affirmed.