ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COM-

PANY *v.* PRINCE.

Opinion delivered December 18, 1911.

1.  RAILROADS—DUTY OF TRAVELLER AT CROSSING.—It is the duty of a
traveller at a railroad crossing to look and listen for the approach of
trains from both directions, and to continue this vigilance until he has
passed the point of danger. (P21.)

2.  SAME—DUTY OF TRAVELLER IN WAGON.—If a traveller at a railroad
crossing is in a wagon, and the situation is such that ordinary care
would require him to stop in order effectively to hear or see a moving

train, the law demands that in the exercise of such ordinary care he should stop before going on the track. (Page 322.)

3.  SAME—CONTRIBUTORY NEGLIGENCE.—Where the undisputed evidence shows that a traveller injured at a crossing could not have failed to have seen or heard an approaching train in time to avoid his injuries if he had used ordinary care, the law declares him guilty of negligence precluding a recovery. (Page 322.)

4.  SAME—CONTRIBUTORY NEGLIGENCE.—Where the evidence is conflicting as to whether a traveller injured at a railroad crossing used due care in looking and listening before attempting to cross, and whether he continued to use such care until the point of danger was passed, the question of contributory negligence is one of fact for the jury to determine. (Page 322.)

5.  INSTRUCTIONS—AMBIGUITY—GENERAL OBJECTION.—A general objection to an instruction is insufficient to call the court's attention to an ambiguity therein. (Page 324.)

6.  DAMAGES—LOSS OF PARENT'S TRAINING.—The loss to minor children of the instruction and the physical, moral and intellectual training of a parent is a proper element to be considered in estimating their damage by reason of the parent's wrongful death. (Page 325.)

7.  SAME—WHEN RECOVERY NOT EXCESSIVE.—Where the testimony shows that decedent was painfully injured and remained conscious for fifteen minutes after she was injured, that she left four girls of tender age, that she was 31 years of age, strong in body and vigorous in mind, that she was devoted to her children, and provided for their wants and comforts, a recovery in their behalf of $10,000 was not excessive. (Page 326.)

8.  SAME—INSTRUCTION.—In an action for damages for the negligent killing of plaintiff's intestate, an instruction that the jury should consider her pain and suffering caused by the accident was not prejudicial as permitting a recovery for her suffering while unconscious where she was conscious until a few moments before she died, and where the questions propounded to the witnesses were such as to impress the jury with the understanding that plaintiff was only claiming a recovery for intestate's suffering while she was conscious. (Page 327.)

Appeal from Hempstead Circuit Court; *Jacob M. Carter,* Judge; affirmed.

*W. E. Hemingway, E. B. Kinsworthy, W. V. Tompkins* and *James H. Stevenson,* for appellant.

1. Appellant's own testimony convicts him of contributory negligence. Before driving upon the track on which the injury occurred, a view of which, he says, was obstructed from the time he came upon the first track by the string of dead cars extending up to the street crossing, he should at least have

checked his team and looked up and down the track which had been shut off from view. If he went upon this track without looking and listening, he can not recover, notwithstanding any primary negligence on the part of appellant. 2 White, Pers. Inj. § § 1008, 1009; 86 Mo. 457; 88 Mo. 534, 547, 548; 129 Mo. 405, 418, 419; 50 Ind. 65; 56 S. E. 432; 131 Ind. 492, 31 N. E. 585. Where a traveller is going across a number of tracks by one crossing, and his view of one or several of them is obstructed at the point of entrance of the crossing, he should stop as often as the performance of an efficient looking and listening makes it necessary under the circumstances. 2 Thompson, Neg. § § 1670, 1646; 2 White, Pers. Inj. § § 1020, 1016; *Id.* pp. 1491, 1492, note; 98 Mo. 272; 94 Va. 460, 475, 36 S. E. 834; 17 N. Y. Supp. 400; 66 N. J. 677, 679, 50 Atl. 677.

2. The fifth instruction given at appellee's request is abstract. It is not supported by any evidence having the slightest tendency to show that the deceased at any time "looked and listened before driving upon the track," etc. This language is misleading in that it does not indicate in any way what track is referred to. The use of the expression "before driving upon the track" is misleading because it would indicate to the jury that the duty to look and listen was not a continuing one, but was fully performed when the travellers surveyed the situation before driving upon the first track. The theory of the instruction is contrary to appellee's own testimony.

3. The tenth instruction was erroneous because it did not state to the jury that no damages could be recovered for pain and suffering on the part of the deceased except from the time of the injury to the time she became unconscious. 68 Ark. 1, 3, 4, 7; 84 Ark. 241, 247; 59 Ark 215.

*Steve Carrigan* and *William H. Arnold,* for appellee.

1. Under the state of facts developed by the evidence in this case, it was not the province of the court to say as a matter of law that appellee and the deceased were guilty of contributory negligence, but it was a question for the jury to determine. 76 Ark. 227; 149 U. S. 43; 134 S. W. (Ark.) 315; 90 Ark. 19; 78 Ark. 520; 79 Ark. 241; 61 Ark. 558; 62 Ark. 159; 45 C. C. A. 21; 76 Ark. 377; 132 S. W. (Ark.) 992; 136 S. W. (Tex.) 279.

2.   There is no error in the fifth instruction.   If, as contended by appellant, there was no evidence that Mrs. Prince looked and listened before driving upon the track, it will not be presumed that she was negligent in this respect.   86 Ark. 183.   Contributory negligence is a matter of defense which must be proved; it can not be presumed.   48 Ark. 333; *Id* 460; 46 Ark. 423; 58 Ark. 125.   Moreover, appellant is estopped from raising this question by its own instructions 6, 7, 15, 16 and 18, requested and given by the court.   94 Ark. 528; 81 Ark. 579; 59 Ark. 317; 67 Ark. 531; 88 Ark. 172; 93 Ark. 589.

The objection that this instruction was misleading because there were several tracks, etc., is disposed of contrary to appellant's contention in the case of *Railway* v. *Hitt*, 76 Ark. 230, where this identical instruction was approved.

3.   If appellant wished the tenth instruction to go further and charge the jury that there could be no recovery for pain and suffering after deceased became unconscious, it should have requested such instruction specifically.   However, there is nothing in the instruction that could have misled the jury into believing that they could award damages for any other than *conscious* pain and suffering.

4.   The verdict for the estate and next of kin, considering her pain and suffering and the pecuniary loss to each of her four children, is not excessive.   93 Ark. 190; *Id*. 183; 57 Ark. 317 Ark. 317; 60 Ark. 550; 87 Ark. 454; 76 Ark. 195.

Frauenthal, J.   This appeal involves two separate suits, instituted against the St. Louis, Iron Mountain & Southern Railway Company, to recover damages for injuries which John A. Prince and his wife sustained by being struck by one of defendant's trains while attempting to cross its railroad track at a public street in the city of Hope.   The wife died from the injuries, and one of the suits was brought by John A. Prince as her administrator to recover damages for the benefit of her estate and next of kin.   The other suit was brought by Prince in his individual capacity, to recover damages for the injuries to his person and property, and also for the loss of the services and companionship of his wife.   The two suits were consolidated and tried together.

The defendant resisted recovery in both cases upon the ground that the injuries were not caused by any negligence

upon its part, but by the contributory negligence of Mr. Prince and his wife. The jury returned a verdict in favor of both plaintiffs, and assessed the damages of John A. Prince at $4,000 and of the administrator for the benefit of the estate and next of kin of his wife at $10,000.

The defendant seeks to reverse the judgments entered upon the verdict, upon the grounds (1) that the uncontroverted evidence shows that plaintiff and his wife were guilty of negligence which contributed to cause the injuries; (2) that error was committed by the trial court in rulings made by it relative to certain instructions; and (3) that the amount of the verdict is excessive.

The plaintiff and his wife resided a few miles from the city of Hope, and about 10 o'clock of the morning of November 25, 1910, they rode in a two-horse wagon to said city. They were riding side by side upon a spring seat, and had with them their child, who was eight months old. The plaintiff and his wife were injured at the crossing of defendant's railroad track on Walnut Street. At this crossing there were nine tracks, running in a direction from about east to west, and the street crossed the tracks from north to south. There were five switch or passing tracks located on the north side of the main track, and three of such tracks were situated upon the south side thereof, and all these tracks were parallel. Plaintiff and his wife arrived at the north side of the crossing, and were preparing to drive over the tracks to the south side where the business portion of the city was located. The testimony in behalf of the plaintiffs tended to prove that when they reached the railroad crossing Mr. Prince stopped his team a short distance from the first track. At this time an engine, with a few cars attached, was doing some switching on the side tracks on the north side of the main track; and Mr. Prince stopped for about ten minutes, and until this engine and cars passed to the east side of the crossing, and apparently had stopped switching.

Upon the track next to and south of the main track there were standing eight box cars, which extended from the crossing, and west thereof, a distance of about one hundred yards, with no engine attached at either end; and on the main line there was standing a caboose some three hundred feet west

from the crossing. After the engine and cars above referred to had passed to the east of the crossing and had ceased switching, Mr. Prince looked up and down the tracks, and listened for any approaching train. Seeing and hearing no moving train, he drove over the five switch tracks and the main track and then crossed the track upon which the eight dead cars were standing, and as his team went on to the next track a freight train composed of nineteen cars backed rapidly along this track, coming from the west, and struck his wagon and team. Mr. Prince, his wife and child were knocked out of the wagon, and the cars passed the crossing for a distance of probably forty or fifty feet. Mrs. Prince was thrown upon the track, and the cars dragged her along for some short distance, and when they stopped one of the wheels passed across her body and rested upon her breast. In this condition she remained thus pinioned for probably fifteen minutes, when the cars were moved, and she was released. During this time she was conscious and talked to her husband and others, asking for her babe, which was placed at her arms. After being released she lost consciousness, and died in about ten minutes thereafter. Mr. Prince was severely injured in his back and on other parts of his body. His wagon was totally destroyed, and one of the horses was killed.

In speaking of the care he exercised in looking and listening before passing to the track upon which the injury occurred, the plaintiff testified in part as follows: "I was driving and was looking both ways when I crossed the railroad. I always look both ways. I looked down toward the depot. The engine backing the train that killed my wife must have been down in that direction, but I did not see it any where. The train was backing up there, but the row of box cars standing there kept me from seeing it. There was a box car standing in front of the depot, and it must have prevented me seeing the moving train. I could not see the train. I looked down in that direction. I did not hear a train coming. I whipped up just as soon as I saw the train to make the horses jump across. I do not think I could have jerked them back, and thought it safest to go across."

He also stated that before going upon the first track he looked both east and west and listened, and did not see or hear

any other train than that which had passed to the east and remained there, and then he started across. He said: "I thought it was all right. There were probably six or eight tracks. There were several box cars standing on the track just south of the main track which would reach about one hundred yards away to the right of me. I looked and saw there was no engine attached to them. I then passed the end of this string of box cars, and just as I got on the other track right next, which was the second track from the main track, I looked, and here came this train, and I didn't have time to get out of the way at all. It was backing east. The horses just got across when the car struck the wagon and threw us out."

It is conceded by counsel for defendant that the evidence on behalf of the plaintiff was sufficient to warrant the jury in finding that it was negligent in the operation of the train at the time of the injury.

The train which caused the injury was a thorough freight, which had left its caboose on the main track, and had then passed to the west for a distance of probably a quarter of a mile, and then had backed, with the 19 cars attached, upon the switch track. It approached the crossing without giving any statutory signal of bell or whistle, and at a rapid rate of speed of from 12 to 18 miles per hour. No brakeman was on the rear car to keep a lookout, and the train passed behind the eight cars standing on the track next to it.

It is earnestly insisted by counsel for the defendant that the evidence most favorable to plaintiff shows that he and his wife were guilty of negligence in failing to look and listen at the proper time and place for the moving train which struck the wagon, and for this reason as a matter of law that no recovery can be had for the injuries sustained. This contention is based upon the ground that the law required that the plaintiff and his wife should not only have looked and listened before going upon the first track, but should have continued the full measure of that care and vigilance at every track until they had crossed all of them and passed the point of danger; and it is urged that they did not do this.

The legal principles applicable to cases where a traveller on a highway is injured at a public crossing have been declared

repeatedly by this court.    It has been held that it is an act of negligence, precluding recovery, for one who approaches a railroad crossing to fail to look and listen for the approach of trains.    It has been further held that such traveler must not only look and listen for the approach of trains from both directions, but he must continue this vigilance until he has passed the point of danger.    If he crosses a number of tracks, he is required to continue this vigilance at each track before going on it; and if the traveller is in a wagon, and the situation is such that ordinary care would require him to stop in order to effectively hear or see a moving train, the law demands that in the exercise of such ordinary care he should stop before going on the track.    *Railway Co.* v. *Cullen* 54 Ark. 431; *Little Rock & Ft. S. Ry. Co.* v. *Blewett,* 65 Ark. 235; *St. Louis & S. F. Rd. Co.* v. *Crabtree,* 69 Ark. 135; *St. Louis, I. M. & S. Ry. Co.* v. *Hitt,* 76 Ark. 225; *Choctaw, O. & G. Rd. Co.* v. *Baskin,* 78 Ark. 355.

And where the undisputed evidence shows that the injured person had an opportunity to see or hear the approaching train at or before the time of the injury, and that his opportunity was such that he could not have failed to have seen or heard such train in time to have avoided the injury if he had used due and ordinary care in looking and listening, then the law declares him guilty of negligence, precluding him from a recovery.    On the contrary, where such evidence is conflicting, the question as to whether or not a traveler at a public crossing did look and listen for an approaching train before attempting to cross, and whether or not he did continue that vigilance and care until the point of danger was passed, is ordinarily one of fact for a jury to determine.    This is especially so where the traveller is misled by other passing trains, or where, by reason of some obstruction, the moving train is hid from his view.

Thus, in the case of *St. Louis, I. M. & S. Ry. Co.* v. *Hitt,* 76 Ark. 227, it was said: "Where a traveller stopped at a railroad crossing and looked and listened, but failed to hear an approaching train, which was making little noise on account of sleet, and was unable to see its headlight by reason of obstructing cars and the converging rays of an arc light and the headlight of a freight train standing near, and where the trainmen were standing near, with better opportunity to see and hear

than he had, who, so far as he knew, failed to warn him of the danger, the question whether in attempting to cross the track he was guilty of contributory negligence was properly left to the jury."

In the case of *St. Louis & S. F. Rd. Co.* v. *Wyatt*, 79 Ark. 241, where a traveller crossed several tracks at a public crossing and was injured, it was held that where there was evidence that the plaintiff looked and listened before going on the track where he was injured, but on account of obstructions he was unable to see the approaching train in time to avoid injury, and was unable to hear it, the question whether he was guilty of contributory negligence was properly submitted to the jury. And to the same effect see also *St. Louis, I. M. & S. Ry. Co.* v. *Garner*, 90 Ark. 19; *Louisiana & Ark. Ry. Co.* v. *Nix*, 94 Ark. 270; *Ft. Smith & W. Ry. Co.* v. *Messek*, 96 Ark. 243; *Arkansas & La. Ry. Co.* v. *Graves*, 96 Ark. 638; *St. Louis, I. M. & S. Ry. Co.* v. *Stacks*, 97 Ark. 405; *Arkansas Cent. Ry. Co.* v. *Williams*, 98 Ark. 167.

In the case at bar, the evidence on behalf of plaintiff tended to prove that before going on the first track he stopped and waited until the way was clear and seemingly safe for him to pass over the tracks. He then looked in both directions before attempting to make the crossing, and as he crossed over the various tracks he continued to look in both directions and to listen for any approaching train. Seeing and hearing no moving train, he passed on; and when he reached the track on which were standing the eight dead cars, he still continued to look and listen. In the meanwhile, the train that caused the injury had been switching at a great distance to the west, and out of his sight. With nineteen cars attached to the engine, it backed at a rapid rate of speed upon the switch track, just back of the standing cars, which obstructed plaintiff's view of the moving train. He testified that, before going on and over this track on which were standing the dead cars, he looked in both directions, and listened for any approaching train, and heard and saw none. This track from its outer rail was only about seven or eight feet from the track on which the injury occurred, and when he had passed these obstructing cars, so that he could see to the west whence the moving train was coming, his horses had passed upon that track, and the front

wheel of his wagon was on the outer rail. It was then for the first time that he could see the approaching train, which was then only a few yards away from him, and too close to avoid the injury. Under these circumstances, we are of the opinion that it became a question of fact for the jury to say whether or not the plaintiff was guilty of contributory negligence.

It is urged that the court erred in giving the following instruction to the jury: "5. You are instructed that if you find from the evidence that John Allen Prince and the deceased looked and listened before driving upon the track, and that the view was so obstructed that they could not see the moving train, or become aware of its approach, that caused the injury, in time to avoid it, and that they took all the precautions of reasonably prudent persons for their own protection to avoid the dangers, if any, of the crossing, then you may find for the plaintiff as to the issue of contributory negligence."

It is contended that this instruction only imposed upon plaintiff the duty of looking and listening at the first track, and not at each track as he passed over the crossing. But we do not think this contention is well founded. By this instruction the plaintiff was required to look and listen before driving on the track, evidently meaning the track upon which the injury occurred, because in the same connection the instruction refers to his view being obstructed, and this was the only track under the evidence at which the plaintiff's view was obstructed. But, if the instruction is also open to the construction that it refers to the first track, then it was ambiguous in this regard, and it was incumbent upon the defendant to make a specific objection to it upon that account. A general objection only thereto was made. This instruction is not in conflict with instructions given in behalf of defendant stating that it was the duty of plaintiff to look and listen at each track and before going on the track where the injury occurred. At the request of defendant the court did specifically instruct the jury that it was the duty of plaintiff to continue his vigilance in looking and listening at each track and until the point of danger was passed before he was entitled to recover.

At the request of defendant, the court charged the jury as follows:

"15.  You are further instructed that it is not sufficient that the plaintiff and deceased may have stopped and looked and listened some distance from the crossing, but it was their duty to look in both directions and listen for approaching trains; and this means that they should continue to be on their guard and continue to use their eyes and ears until the track and danger was passed; and if you find from the testimony that by either looking or listening continuously up to the track upon which they were struck they, by the use of ordinary care, could have seen or heard or been apprised of the fact of the approaching train in time to have avoided the injury, that they are guilty of contributory negligence, and your verdict should be for the defendant."

And in another instruction the same requirement of vigilance upon the part of the plaintiff was repeated.

It is contended by the defendant that the amount of the verdict returned by the jury was excessive.  It is not, however, insisted by counsel for defendant in their brief upon this appeal, that the amount of the verdict returned in favor of plaintiff, John A. Prince, in his suit for recovery of damages sustained by him for injury to himself and property and the loss of the services and companionship of his wife is excessive.  It is only urged that the amount of the recovery in behalf of the administrator for the benefit of the estate and next of kin of the wife is excessive.

The elements of damages embraced in the verdict in that case consisted of the physical and mental pain and suffering of the wife and also of the pecuniary loss of the next of kin, sustained by her death.  The next of kin were four little girls, aged, respectively, 10, 8 and 6 years, and 8 months.  The mother was 31 years of age, strong in body and vigorous in mind.  She was devoted to her children, and provided in a large measure for their wants and comforts.  She was of industrious habits, good character and a dutiful parent.

It has been held that the loss to minor children of the instruction and the physical, moral and intellectual training by a parent is a proper element to be considered in estimating the damage to the children by reason of such parent's wrongful death.  *Railway Co.* v. *Maddry*, 57 Ark. 317; *Railway Co.* v. *Sweet*, 60 Ark. 550; *St. Louis, I. M. & S. Ry. Co.* v. *Haist,*

71 Ark. 258; *St. Louis & N. A. Rd. Co.* v. *Mathis*, 76 Ark. 195; *Kansas City So. Ry. Co.* v. *Henrie*, 87 Ark. 454; *Kansas City So. Ry. Co.* v. *Frost*, 93 Ark. 190.

It is provided by our statute (Kirby's Digest, § 6290) that, for the death of a person caused by the wrongful act or neglect of another, an action shall be brought for the benefit of the next of kin, and the "jury may give such damages as they shall deem a fair and just compensation with reference to the pecuniary injuries resulting from such death to the next of kin." By this provision of the statute each child who is in the class of next of kin is entitled to recover the amount of the pecuniary loss sustained by such child by reason of the death of the parent.

In this case there were four girls of tender years, and each of them was entitled to recover the same amount of damages as if there had only been one child who was next of kin. In addition to the damage sustained by the four children, the verdict in favor of the administrator also included the damages sustained by reason of the physical and mental pain and suffering of the deceased. The testimony tended to prove that she was most painfully injured, and that she remained conscious to physical and mental suffering for fifteen minutes. Taking into consideration these various elements of damage which went to make up the amount of this verdict returned in favor of the administrator for the benefit of the estate and the next of kin of the wife, we do not think that it was excessive.

It is urged in this connection that the court erred in giving the following instruction to the jury: "If you should find for John A. Prince as administrator of the estate of Annie Prince, deceased, under the instructions in this case, then you should take into consideration the pain and suffering, mental and physical, if any, of the said Annie Prince, caused by said accident." The defendant objected to this instruction because it did not state to the jury that no damages could be recovered for pain and suffering on the part of Annie Prince except from the time of the injury to the time she became unconscious. It is urged that for an injury causing instantaneous death no recovery can be had for pain and suffering; and that likewise, where life remains only for a short time, and unconsciousness instantly follows the injury, no recovery can be had for pain

and suffering during the period of such unconsciousness. In other words, it is insisted that such recovery can only be had for conscious pain and suffering. *St. Louis, I. M. & S. Ry. Co.* v. *Dawson*, 68 Ark. 1.

But under the circumstances of this case we do not think that any prejudicial error was committed by the giving of this instruction. The evidence shows that the wife retained consciousness for about fifteen minutes after the injury, and then died in a few minutes, probably ten minutes, thereafter. It clearly appears that recovery for pain and suffering was only based upon the time during which she was conscious. Questions were propounded by both parties in order to arrive at the time that she actually remained conscious, and to fix such time with some degree of definiteness, thus indicating that the plaintiff was only claiming a recovery for pain and suffering during the time that she actually remained conscious. We are of the opinion, from the manner in which these questions were propounded and answered, that the jury must have been impressed with the understanding that the plaintiff was only asking a recovery, and by this instruction could only obtain a recovery, for the pain and suffering that deceased actually endured during the time she was still conscious. Under the testimony she did not linger with life for any considerable time in an unconscious state. After consciousness was lost, she died so quickly that it is hardly possible that the jury could have been misled into believing they could allow or in allowing any sum for pain and suffering during such slight period of unconsciousness, though life was not then completely extinct. In cases where the injured person lingers with life for a considerable time, but in an unconscious state, it is proper to limit the recovery for pain and suffering from the time of the injury to the time of unconsciousness, and to specifically instruct the jury to that effect.

We have carefully examined all other errors assigned by the defendant, but we do not find that any of them is well founded. The judgment is accordingly affirmed.